**Stanley R. BRYAN, Plaintiff and Appellant,**

v.

**UTAH INTERNATIONAL, a corporation, and Howard Savage, Defendants and Respondents.**

**No. 13773.**

Supreme Court of Utah.

March 24, 1975.

Patrick H. Fenton, Cedar City, for plaintiff-appellant.

Keith E. Taylor and LeRoy S. Axland, of Parsons, Behle & Latimer, Salt Lake City, for defendants-respondents.

MAUGHAN, Justice:

This is an appeal from an order of the district court dismissing, with prejudice, the complaint of plaintiff and appellant, Stanley R. Bryan, against defendants and respondents, Utah International, a corporation, and Howard Savage. Hereafter appellant will be referred to as Bryan, and respondents individually, as Utah International, and Savage.

Bryan's complaint alleges that he was an employee of Utah International, and worked as a shovel operator under the supervision of Savage who was his supervisor. Savage was also an employee of Utah International. The shovel Bryan operated was powered by electricity, delivered to it through a large cable. When the shovel changed locations it became necessary to move the cable also. Owing to the size of the cable it was necessary to employ the use of a pickup truck in aid of the work. Savage was the operator of the truck. Bryan, in the normal course of his employment, attached a connecting device to the cable, which, in turn, was used to connect the cable to the truck. Bryan alleged that, at this point, Savage, intentionally, "and with malice aforethought," started his pickup intending to jerk the cable against the body of Bryan. It is alleged that Sav-

age's intention was realized, and in the process Bryan was injured. Further allegations are that intentional misconduct of this sort had been going on for considerable time; such was known by various supervisors of Utah International; and that Savage attempted to keep the matter hidden by not making an accident report until four days after the occurrence.

Given the facts as set forth in Bryan's complaint, does Bryan have a right of action outside the provisions of our Workmen's Compensation Act? Our statute 35–1–60, U.C.A.1953, as amended, is as follows:

> The right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee, whether resulting in death or not, *shall be the exclusive remedy* against the employer and shall be the exclusive remedy against any officer, agent or employee of the employer and the liabilities of the employer imposed by this act shall be in place of any and all other civil liability whatsoever, at common law or otherwise, to such employee or to his spouse, widow, children, parents, dependents, next of kin, heirs, personal representatives, guardian, or any other person whomsoever, on account of any accident or injury or death, in any way contracted, sustained, aggravated or incurred by such employee in the course of or because of or arising out of his employment, *and no action at law may be maintained against an employer or against any officer, agent or employee of the employer based upon any accident, injury or death of an employee.* . . .
> [Emphasis added.]

Workmen's compensation is based on a social theory having as its enlightened objective the prevention of destitution and want, of certain defined employees suffering work-connected injury. It provides an efficient, dignified, and the most certain method of receiving compensation for such injuries.

Workmen's compensation legislation became a necessity, because of the inevitable increase in industrial accidents born of the industrial revolution, which produced the factory system; and the accompanying decrease in an employee's common law remedies, by which one might recover for work-connected accidents.

While England and the United States were busily engaged in developing judicially pronounced defenses against claims of injured employees, Prussia, in 1838, began the development of the social theory of compensation for industrial accidents, which culminated in a compulsory industrial insurance plan in 1887. It is interesting to know that by 1884 Germany had adopted the first modern compensation system, and this was 13 years before England, 25 years before the first American jurisdiction, and 65 years before the last American jurisdiction, adopted workmen's compensation plans.

The American system, unlike a pure social insurance, places the cost upon the consumers of the product of the particular industry engaged in the insured activity. The whole thrust of the development of this social theory was to provide a remedy for the employee, injured in an industrial accident, while at the same time protecting the employer from disruptive or vexatious lawsuits, because of the employer's alleged negligence. This latter observation is well stated in Smith v. Alfred Brown Company,[1] a case cited in respondent's brief.

This capsule reference to the history of workmen's compensation serves to direct attention to the reason for such legislation. Its primary objective has been to remove industrial negligence, in all its forms, from the concept of the law of tort. Because of the conditions of "factory life" great numbers of situations arose, which required compensatory action, and the common law of tort ceased to be socially beneficial and became detrimental to the society in these situations. For an excellent treatment of

1. 27 Utah 2d 155, 493 P.2d 994 (1972).

the subject see 1 Larson, Workmen's Compensation Law, Sec. 1, et seq.

As are all workmen's compensation statutes, our act is a remedial one, and in its desire to implement the social policy the legislature has reached out to include persons not in the common employment, and has said that personal injury, by accident, will include injury caused by the willful act of a third person.[2] The legislature has also provided that an employee may recover increased compensation if the injury results from a willful failure of the employer to comply with the law.[3] The word "willful" has been defined by this court when it addressed itself to 35–1–12, in the case of Park Utah Mining Company v. Industrial Commission.[4] It was there stated that willful implies something in addition to mere negligence.

There is also a provision for an action for damages, on the part of the injured employee, when the injury arises from the "wrongful act or neglect" of another person not in the same employment,[5] while, at the same time, allowing recovery of compensation. This same provision provides for disbursement of any recovery, and directs that the one liable for compensation payments shall be reimbursed, and that, after other deductions therein allowed, the remainder shall be turned over to the injured employee, or heirs.

Nowhere does the act deal directly with intentional acts, such as the one alleged here. The definition of the word "intentional" is more compact than is that of the word "willful"; and when used to describe a wrongful act its meaning is that the act was not only done knowingly, but with the knowledge that it was wrongful to do it.[6]

Only in Section 35–1–60 would it appear that an employee, injured by the premeditated and intentional act of another in the same employment, would not be able to maintain an action for damages. That section says, in part:

. . . no action at law may be maintained against an employer or against any officer, agent or employee of the employer based upon any accident, injury or death of an employee.

We think that such a provision is not a prohibition against the maintenance of an action for damages, because of an *intentional act*. The policy of our law has always been to allow one injured through the intentional act of another, to seek redress from the one intending harm. That policy has the salutary effect of deterring intentional injury. It would serve no social purpose to allow an employee to intentionally injure another employee engaged in the same employment, then use an otherwise socially beneficial, remedial, statute as a shield for such wrongdoing.

If an action is allowed against a third party for a third party's willful act which causes injury, certainly it cannot be said that an action would not be allowed against the third party for that third party's intentional act, which causes injury. And, if an action is allowed against a third party for an intentional injury, certainly it would be allowed against a person in the same employment for his intentional injury.

There is no justifiable reason why one, injured by the intentional act of a fellow employee, cannot seek recovery for damage, and if in fact there is a recovery, reimburse the employer for such amounts as would be necessary to compensate the employer for the compensation received by plaintiff employee in the same fashion as provided under Section 35–1–62.

Bryan here also sues Utah International, his employer. His alleged ground is that the intentional misconduct, which injured him, had been going on for some time and was known by various supervisors of Utah International. No allegation is made that the employer intended the inju-

2. Sec. 35–1–44, U.C.A.1953, as amended.
3. Sec. 35–1–12, U.C.A.1953.
4. 62 Utah 421, 220 P. 389.

5. Sec. 35–1–63, U.C.A.1953.
6. 46 C.J.S. Intentional p. 1106; 94 C.J.S. Willful p. 620.

ry, and no such showing could be made by merely investing "various supervisors" with knowledge of the misconduct. No claim is made that the injurious act was directed or intended by the employer.[7] We sustain the dismissal as against Utah International.

Reversed and remanded with instructions to reinstate the complaint against Savage, and require said defendant to answer. No costs awarded.

ELLETT and TUCKETT, JJ., concur.

HENRIOD, C. J., concurs in the result.

CROCKETT, Justice (dissenting).

The main opinion states that "There is no justifiable reason why one, injured by the intentional act of a fellow employee, cannot seek recovery for damage, . . ." against the fellow employee. The only reason I know of is that that is so plainly prohibited by our statutory law. Section 35–1–60, quoted in the opinion, so states in the plainest possible language:

The right to recover compensation . . . by an employee, . . . *shall be the exclusive remedy against the employer* and shall be the exclusive remedy against any officer, agent *or employee of the employer* and the liabilities of the employer imposed by this act *shall be in place of any and all other civil liability whatsoever, at common law or otherwise* . . . on account of any accident or injury or death, in any way . . . incurred by such employee in the course of or because of or arising out of his employment, *and no action at law may be maintained against an employer or* . . . *employee of the employer based upon any accident, injury or death of an employee.* . . .

If the clearly expressed intent of this statute needs any background for interpretation, it is to be found in its history. Its

antecedent in our prior code was Section 42–1–57, U.C.A.1943. That section contained the provision that where an injury in employment resulted from *willful misconduct or willful disregard* of the employee's safety, the employee could have the option of either claiming compensation under the act or maintaining an action at law for damages. But Chapter 52, S.L.U. 1949, repealed that section and re-enacted it as 35–1–60 quoted above. Significantly it deletes any such option; and provides that the workmen's compensation is the exclusive remedy as against both employers and employees.[1]

It seems so obvious as to not admit of doubt that it was the intent and purpose of the amendment to eliminate controversies of this character, where an employee may allege that the conduct of an employer or fellow employee was willful or intentional. In order to accomplish that purpose, it will be noted that in each instance the language of the statute as quoted above is all inclusive: it protects the ". . . employer . . . *or employee* . . . [from] *all* other civil liability whatsoever at common law *or* otherwise . . . on account of any accident or [any] injury . . ."; and there are no exceptions or loopholes. The statute then doubles the clarity of its intent by providing the reverse that: ". . . no action at law may be maintained against an employer or . . . employee of the employer based upon any accident, [or any] injury or death of an employee. . . ."

I cannot perceive how the statute could make it more clear that when workmen's compensation coverage is provided, that is the only remedy an injured employee has against his employer or a fellow employee. Whatever moral aspects of such a situation may be, that is the state of our law. Under the circumstances shown, the trial court had no choice but to follow the clear and unequivocal mandate of the statute. We

7. 2 Larson, ibid, Secs. 68:23, 68:13.

1. See Peterson v. Fowler, 27 Utah 2d 159, 493 P.2d 997 (1972); Smith v. Alfred Brown Co., 27 Utah 2d 155, 493 P.2d 994 (1972).

should do likewise and sustain his ruling. If there is to be any variance from or change in the law as declared by that statute, it should be made by the legislature. I would affirm the judgment. (All emphasis added.)