Clifford F. **LANTZ**, Plaintiff
and Appellant,

v.

**NATIONAL SEMICONDUCTOR CORP.**,
John Ford, and John Doe(s),
Defendants and Respondents.

No. 880048–CA.

Court of Appeals of Utah.

May 26, 1989.

Richard W. Giauque, Stephen T. Hard, Salt Lake City, for plaintiff and appellant.

Val R. Antczak, John B. Wilson, Julia Attwood, Salt Lake City, for defendants and respondents.

Before GARFF, GREENWOOD and ORME, JJ.

ORME, Judge:

Clifford Lantz appeals the summary judgment dismissing his tort action against his former employer, National Semiconductor Corporation ("National"), and one of its supervisory employees, John Ford. In dismissing, the district court concluded that the Utah Workers' Compensation statute, Utah Code Ann. §§ 35–1–1 to –107 (1988), provided Lantz's exclusive remedy against National and precluded any action against Ford. We agree and affirm.

### FACTS

"In reviewing a summary judgment, we analyze the facts and inferences in a light most favorable to the losing party." *Copper State Leasing Co. v. Blacker Appliance & Furniture Co.*, 770 P.2d 88 (Ct. App.1988). Although the facts are mostly undisputed, with this standard in mind we set forth any disputed facts as characterized by Lantz. *See also Abdulkadir v. Western Pac. R.R. Co.*, 7 Utah 2d 53, 318 P.2d 339, 341 (1957) (summary judgment proper, even if facts disputed, where party who successfully moved for judgment would be entitled to judgment no matter how factual dispute was resolved).

Lantz worked as a "stepper operator" in an area of National's West Jordan plant known as the Mos II Fab. Within the Mos II Fab, an area where computer chips are

fabricated, there are several specially designated work areas. On January 14, 1985, Ford was made the shift general foreman of the Mos II Fab. Shortly thereafter, Ford's position was changed so that he only supervised employees in the etch area of the Mos II Fab. Lantz was employed in a second smaller area, no longer under Ford's supervision, called the "stepper bay." Lantz and his stepper bay colleagues were not informed of the change in Ford's responsibilities and they assumed he continued as general foreman for their shift. Indeed, Ford continued to exercise some authority over the stepper bay workers.

On February 3, 1985, there was a chemical spill in a third area of the Mos II Fab, the "spin aisle." The spin aisle is located between the etch area and the stepper bay. At approximately 4:00 a.m., Lantz approached Ford to report that several stepper employees were feeling ill. Lantz asked for permission to evacuate the stepper bay. Ford said the smell "wasn't that bad" and instructed: "Business as usual." Despite Ford's response, several of Lantz's fellow employees immediately left the work area. At approximately 5:00 a.m., Lantz again approached Ford, but this time only to discuss product specifications. Lantz made no reference to the smell and did not request permission to evacuate the area. Finally, sometime between 6:00 and 7:00 a.m., Lantz approached Ford, complained of illness, and requested permission to evacuate. Ford again replied that the smell was not that bad. Shortly thereafter, Lantz became ill and fell unconscious. Exposure to the toxic fumes resulted in serious injury to Lantz.

Lantz was aware of National's policy that permitted employees to evacuate without supervisory authorization whenever they deemed conditions unsafe. Despite the departure of a number of his colleagues at different times throughout the morning, Lantz feared some reprisal if he were to do likewise.

■■■■ Lantz filed this civil action against National and Ford. While National is clearly entitled to its judgment of dismissal,[1] the summary judgment in favor of Ford merits discussion.

## EXCLUSIVITY OF REMEDY UNDER UTAH WORKERS' COMPENSATION LAW

For reasons explained at some length in *Bryan v. Utah Int'l*, 533 P.2d 892, 893–94 (Utah 1975), an injured workers' recovery under the workers' compensation program is in lieu of ordinary tort remedies. "The essence of a workers' compensation system is that it is a mutual arrangement of reciprocal rights between an employer and an employee whereby both parties give up and gain certain advantages." *Bingham v. Lagoon Corp.*, 707 P.2d 678, 679 (Utah 1985). The purpose of the workers' compensation act "is to provide speedy and certain compensation for workmen and their dependents and to avoid the delay, expense and uncertainty which were involved prior to the act; and the concomitant purpose of protecting the employer from the hazards of exorbitant and in some instances perhaps ruinous liabilities." *Adamson v. Okland Constr. Co.*, 29 Utah 2d 286, 508 P.2d 805, 807 (1973).

The controlling statute in Utah provides in part as follows:

> The right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee, whether resulting in death or not, *shall be the exclusive remedy against the employer and shall be the exclusive remedy against any officer, agent or employee* of the employer and *the liabili-*

---

1. The claim against National is based only on a theory of vicarious liability. Lantz does not claim National directed or intended Ford to injure him. National is thus insulated from civil liability by the exclusivity provision of the workers' compensation scheme even if Ford is not. *See Mounteer v. Utah Power & Light Co.*, 773 P.2d 405, 407, (Ct.App.1989). *See also* 2A A. Larson, The Law of Workmen's Compensation, §§ 68.21, 68.23 (1988). The rule is different where the person intentionally injuring the employee is "realistically the alter ego of the corporation" rather than "merely a foreman, supervisor, or manager." 2A A. Larson, The Law of Workmen's Compensation, § 68.21 at 13–69 (1988).

ties imposed by this act shall be in place of any and all other civil liability whatsoever, at common law or otherwise ..., and no action at law may be maintained against an employer or against any officer, agent or employee of the employer based upon any accident, injury or death of an employee.[2]

Utah Code Ann. § 35-1-60 (1988) (emphasis added).

█ The Utah Supreme Court has recognized an exception to the exclusiveness of the workers' compensation remedy as set forth in § 35-1-60 for intentionally caused injuries.[3] *Bryan v. Utah Int'l*, 533 P.2d 892, 894-95 (Utah 1975). The single issue presented by this case, and not addressed in *Bryan*, is the meaning of "intentional"— i.e., what level of intent must be shown to come within the exception recognized in *Bryan*.[4]

## SCOPE OF EXCEPTION TO WORKERS' COMPENSATION EXCLUSIVITY

Lantz alleges that Ford commanded him to continue to work in a dangerous situation which Ford knew was substantially certain to cause Lantz injury. Lantz encourages this court to adopt the "substantial certainty" definition of "intentional" recognized in the area of tort law. Lantz reminds us of the discussion in *Bryan* that "the definition of the word 'intentional' is more compact than is that of the word 'willful'; and when used to describe a

wrongful act its meaning is that the act was not only done knowingly, but with the knowledge that it was wrongful to do it." 533 P.2d at 894. Lantz takes this as a declaration by the *Bryan* court that the same definition of "intentional" employed in tort law should be applied in the workers' compensation context. Under that approach, an actor's conduct is deemed intentional if he desires to cause the consequences of his act *or* believes the consequences are substantially certain to follow. *See* Restatement (Second) of Torts § 8A at 15 (1965).

National, on the other hand, argues that the exception recognized in *Bryan* is only applicable in situations characterized by "a conscious and deliberate intent directed to the purpose of inflicting injury." *Hildebrandt v. Whirlpool Corp.*, 364 N.W.2d 394, 396 (Minn.1985) (quoting *Breimhorst v. Beckman*, 227 Minn. 409, 35 N.W.2d 719, 730 (1949)). This is the definition of "intentional" contemplated by the workers' compensation schemes in a majority of jurisdictions. 2A A. Larson, The Law of Workmen's Compensation, § 68.13 (1988). Larson, who provides an exhaustive list of decisions which we need not repeat here, concludes that common law liability "cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or

---

2. The exclusivity of § 35-1-60 is reinforced in other provisions in the statute, such as § 35-1-12, which provides for an additional workers' compensation award—but not for a civil tort remedy—if the injury was caused by the employer's *willful* failure to protect the employee:

No employer shall construct or occupy or maintain any place of employment that is not safe, or require or knowingly permit any employee to be in any employment or place of employment which is not safe, ... and no employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety and welfare of his employees. Where injury is caused by the willful failure of an employer to comply with the law or any lawful order of the industrial commission, compensation as provided for in this title shall be increased fifteen per cent, except in case of injury resulting in death.

Utah Code Ann. § 35-1-12 (1988).

3. We note that no reported Utah cases recognizing the exception created in *Bryan* have invoked that exception. This court has recently reiterated the exclusivity concept and the limited nature of the exception. *Mounteer v. Utah Power & Light Co.*, 773 P.2d 405 (Ct.App.1989).

4. *Bryan* inconsistently refers to "intentional act" and "intentional injury," 533 P.2d at 894-95, making it somewhat unclear whether it is enough that an act was intended and injury resulted or whether injury must actually have been intended. The parties to this appeal agree with our reading of *Bryan*, namely that injury must actually have been "intended," but they differ on what *level* of intent must be shown to come within the exception for intentionally caused injuries.

other misconduct of the employer short of a *conscious and deliberate intent directed to the purpose of inflicting an injury.*" *Id.* at 13–11 (emphasis added). *See id.* at 13–10 through 13–36. Pertinent to factual scenarios like the instant one, Larson states:

> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, willfully failing to provide a safe place to work, or even willfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental nature.[5]

*Id.* at 13–36 through 13–44 (footnotes omitted). While Larson's statements address an *employer's* liability, Utah's Workers' Compensation statute expressly protects—to the very same extent as the employer—"any officer, agent or employee of the employer." Utah Code Ann. § 35–1–60 (1988).

The weight of authority marshalled by Larson is overwhelming and his analysis is compelling. We accordingly reject Lantz's argument that knowing to a substantial certainty that injury will follow is sufficient to invoke the exception contemplated in *Bryan* to the exclusiveness of the workers' compensation remedy.

■ Viewing the evidence in a light most favorable to Lantz, he has failed to show either that Ford had an actual deliberate intent to injure him or the existence of a material factual dispute concerning the issue. Absent such a showing, summary judgment was properly entered in favor of Ford as well as National. *See* Note 1, *supra.*

## CONCLUSION

As previously mentioned, the purpose of the workers' compensation program is to create a system in which "employers are

barred from presenting certain defenses to the claim for compensation, [and an] employee's burden of proof is relatively light.... In a word, these statutes compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." *Mingachos v. CBS, Inc.,* 196 Conn. 91, 491 A.2d 368, 373 (1985). Requiring an injured employee to show that his employer or fellow employee manifested a deliberate intent to injure him before allowing an exception to the statute is fully consistent with this purpose. Based on the foregoing, the summary judgment entered in favor of National and Ford was correct and it is affirmed.

GARFF and GREENWOOD, JJ., concur.

---

5. Larson further states that "[a] complaint, to survive a motion to dismiss, must do more than merely allege intentional injury as an exception to the general exclusiveness rule; it must allege *facts* that add up to a deliberate intent to bring about injury." 2A A. Larson, The Law of Workmen's Compensation § 68.14 at 13–46 (1988) (emphasis in original).