Kim HIRASE–DOI, Plaintiff–Appellant,

v.

U.S. WEST COMMUNICATIONS, INC., Defendant–Appellee,

and

Kenneth Coleman, Defendant.

No. 93–4188.

United States Court of Appeals, Tenth Circuit.

July 28, 1995.

Thomas R. Karrenberg of Anderson & Karrenberg, Salt Lake City, UT (Linda M. Jones, with him on the brief), for plaintiff-appellant.

Floyd A. Jensen, Salt Lake City, UT (Janet Hugie Smith and Lisa A. Yerkovich of Ray, Quinney & Nebeker, with him on the brief), for defendant-appellee.

Before SEYMOUR, Chief Judge, LOGAN, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

This case is before us on appeal of the district court's order granting summary judgment against Plaintiff Kim Hirase–Doi ("Doi") on all of her claims against Defendant U.S. West Communications, Inc. ("US West"). Doi brought suit against US West alleging hostile work environment sexual harassment in violation of Title VII, as well as state common law tort claims. The district court entered a final judgment with respect to these claims pursuant to Fed. R.Civ.P. 54(b), and Doi filed a timely notice of appeal. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, affirm the grant of summary judgment for US West on Doi's state law claims, reverse the district court's dismissal of Doi's Title VII claim, and remand for further proceedings.

## I. BACKGROUND

Doi began working for US West as a directory assistance operator in 1982. At the time of the events related to this complaint against US West, she worked as a "relieving service assistant," a job in which she sometimes assisted less experienced operators. Doi was a member of the Communications Workers of America, the labor union responsible for the collective bargaining agreement under which she was employed.

On April 15, 1991, US West hired Kenneth Coleman ("Coleman") as a directory assistance operator at its Operator Service Center in Midvale, Utah. Doi alleges that during Coleman's employment at US West from April 15 to July 15, 1991, he sexually harassed the female employees around him on numerous occasions, culminating in an assault on Doi on July 13.[1]

During Coleman's training sessions in his first week at US West, he made sexually offensive remarks to Rebekah MacKinnon ("MacKinnon") and Amy Gee ("Gee"), two women who were also participating in the training. His remarks included persistent requests for sex and inquiries of their sexual

conduct. He also reportedly made open-ended invitations to all female employees to satisfy his sexual desires. The training supervisor informed Coleman that his conduct was inappropriate and could be construed as sexual harassment. Despite this warning, Coleman continued to make sexually offensive comments and overtures to MacKinnon and Gee. Again, the training supervisor advised Coleman to refrain from such conduct, but his continued sexual overtures and innuendos caused the supervisor to conclude that Coleman had not taken her warnings seriously.

On May 16, after a continuation of Coleman's unwelcome sexual comments and solicitations, MacKinnon and Gee reported Coleman's conduct to their manager, Cheryl Westwood (the "Manager"), at US West. They also reported that a third woman was being harassed by Coleman, but had chosen not to come forward. In response to the reports, the Manager met with Coleman and, later, with Coleman, MacKinnon, and Gee. The Manager warned Coleman that any further harassment could result in discipline up to and including dismissal.

Some time after the meeting with Coleman and the Manager, MacKinnon and Gee independently reported to the Manager that Coleman was subjecting them to threatening and intimidating stares. In Gee's case, the Manager asked Coleman to stop, while in MacKinnon's case, the Manager simply told MacKinnon that she should expect that from Coleman. During this same time period, the training supervisor also reported her earlier reprimands of Coleman to the Manager, and the training supervisor advised the Manager that Coleman made sexual statements and solicited sexual invitations to all female employees with whom he came in contact. On May 17, the Manager herself disclosed to two other employees, who were also union representatives, that Coleman had made sexually offensive remarks to her.

During May, June, and early July, Coleman continued to work as a directory assis-

---

1. The following description of events is based on Doi's allegations as properly supported through affidavits pursuant to Fed.R.Civ.P. 56(e). Because this case is before us at the summary judgment stage, we must view "the factual rec-

ord and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment"—in this case, Doi. *See Universal Money Ctrs., Inc. v. AT & T*, 22 F.3d 1527, 1529 (10th Cir.1994).

tance operator in an unsupervised area and engaged in sexually offensive behavior towards numerous other women in the area. Coleman subjected Lisa Jo Valdez ("Valdez") to comments, winking and staring with possible sexual overtones, and Valdez reported the behavior to her union representative, in accordance with a written US West policy for reporting such conduct. Coleman frequently propositioned Rita Branch Davis ("Davis"). Davis asked Coleman to stop, but apparently did not report his behavior to US West management. Coleman passed a sexually explicit note to Jamie Sharp, who immediately threw the note away and left the area, but did not report the incident to US West management. Coleman approached Cheryl Casper ("Casper") in her cubicle where he attempted to kiss her on the neck and brushed her breast with his hand. Casper told Doi of the incident, but did not report it to US West management. Coleman made sexually suggestive comments to Heather Case, who simply avoided Coleman after the incident, but did not report it to US West management. Coleman made sexually suggestive comments to Lorraine Tanner, who also failed to report Coleman's behavior to US West.

Coleman also engaged in sexually offensive behavior towards Doi during this time period, including making verbal and written sexually offensive remarks propositioning her and attempting to touch her breast. In addition, Doi observed Coleman approaching and flirting with numerous other female employees. Doi reported Coleman's behavior to Gail Metcalf ("Metcalf"), a union vice-president, in accordance with US West policy, at some time prior to July 13, 1991. Then, on July 13, Coleman grabbed Doi between her legs. Doi reported the incident on July 15, after which Coleman was promptly suspended and immediately resigned. Doi brought this action against US West for hostile work environment sexual harassment in violation of Title VII, along with state claims for failure to supervise and intentional infliction of emotional distress. The district court granted summary judgment to US West and dismissed all of Doi's claims.

## II.  DISCUSSION

We review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court pursuant to Fed.R.Civ.P. 56(c). *Universal*, 22 F.3d at 1529; *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Universal*, 22 F.3d at 1529 (quoting Fed.R.Civ.P. 56(c)). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics*, 912 F.2d at 1241. If there is no genuine issue of material fact in dispute, then we next determine if the substantive law was correctly applied by the district court. *Id.*

### A.  Hostile Work Environment Sexual Harassment

In granting summary judgment to US West on Doi's Title VII claim, the district court found that Coleman was a non-management, non-supervisory co-worker of Doi who was not acting within the scope of his employment when he committed the alleged acts of harassment. Therefore, the district court held, US West could only be liable if it was negligent or reckless in failing to remedy or prevent a hostile work environment of which management level employees knew or in the exercise of reasonable care should have known. *See Hirschfeld v. New Mexico Corrections Dep't.*, 916 F.2d 572, 576–77 (10th Cir.1990). The court then found that Doi had produced no viable evidence that US West knew or should have known of any behavior by Coleman sufficient to establish US West's liability to Doi and further found the evidence undisputed that when US West did become aware of Coleman's behavior, it took prompt and appropriate remedial action. It is on these findings that Doi bases her appeal, arguing that there are genuine issues of material fact as to whether US West knew

or should have known of Coleman's behavior and negligently failed to take appropriate action to remedy or prevent that behavior.

### 1. The Existence of a Hostile Work Environment at US West

The district court did not address the predicate issue of whether a hostile work environment existed at US West as a result of Coleman's actions. However, US West has raised this issue and denied the existence of a hostile work environment—apparently as an alternative basis for affirmance of the district court decision—and consequently we address it herein.

■ A plaintiff may prove the existence of hostile work environment sexual harassment in violation of Title VII "where '[sexual] conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'" *Hirschfeld*, 916 F.2d at 575 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986)). "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.* (quoting *Meritor*, 477 U.S. at 67, 106 S.Ct. at 2405).

■ US West argues that Doi cannot solely rely on Coleman's harassment of other workers to establish a hostile work environment for herself. However, we resolved that issue to the contrary in *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415–16 (10th Cir. 1987), where we held that evidence of a general work atmosphere, including evidence of harassment of other women, may be considered in evaluating a claim. *See also Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533, 538 (10th Cir.1994) ("incidents of sexual harassment directed at employees other than the plaintiff can be used as proof of the plaintiff's claim of a hostile work environment," quoting *Hicks*, 833 F.2d at 1415). US West then argues that *Hicks*, nevertheless, required at least some evidence of hostility directed toward the plaintiff. However, we need not reach the issue of whether our holding in *Hicks* is so limited, because Doi has provided evidence that she herself was subject to harassment by Coleman.[2] Thus, Doi may rely on Coleman's harassment of others to the extent that it affected her general work atmosphere.

■ Nevertheless, US West correctly asserts that Doi may only rely on evidence relating to harassment of which she was aware during the time that she was allegedly subject to a hostile work environment. In *Harris v. Forklift Sys., Inc.*, —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993), the Supreme Court required both an objectively hostile work environment, as well as a subjective perception by the plaintiff that the environment was abusive, for a sexual harassment hostile work environment claim. Doi could not subjectively perceive Coleman's behavior towards others as creating a hostile work environment unless she knew about that behavior. Therefore, Doi may establish the existence of a genuine issue of material fact as to whether she was subject to a hostile work environment based on evidence of Coleman's sexually offensive conduct towards herself and/or others in her office, provided she was aware of such conduct.

■ Doi has produced such evidence through her affidavit alleging Coleman's verbal and written comments, his attempt to touch her breast, and finally his grabbing of her. In addition, Doi alleges that she saw Coleman harassing numerous other women during this same two month period, and Casper told Doi of Coleman's harassment of her. Together, these allegations, if accepted, could provide the finder of fact with a reasonable basis upon which to find that Doi was subjected to hostile work environment sexual harassment. While Doi's knowledge or lack of knowledge of other specific allegations of harassment may be relevant if Doi eventually

---

**2.** We note, however, that in *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1385 (10th Cir.1991), there is dicta in which we interpret *Hicks* as follows: "[In *Hicks*,] [w]e held that even a woman who was never herself the object of sexual harassment might have a Title VII claim if she were forced to work in an atmosphere where such harassment was pervasive."

must prove her claims at trial, it need not be determined here, as there is more than adequate evidence to survive summary judgment on this issue without any of the other specific allegations of harassment of other co-workers.

## 2. US West's Knowledge of the Hostile Work Environment

■ We next consider whether Doi has raised a genuine issue of material fact as to US West's liability for Coleman's behavior. In *Meritor*, the Supreme Court explained that we should look to agency principles for guidance in determining when an employer is liable for hostile work environment sexual harassment by its employees in violation of Title VII. 477 U.S. at 72, 106 S.Ct. at 2408. In *Hicks*, we followed the Supreme Court's direction and identified three alternative bases for employer liability. 833 F.2d at 1417–18. An employer is liable for: (1) any tort committed by an employee acting within the scope of his or her employment; (2) any tort committed by an employee in which the employer was negligent or reckless; or (3) any tort in which the employee purported to act or speak on behalf of the employer and there was reliance upon apparent authority, or the employee was aided in accomplishing the tort by the existence of the agency relation. *Hirschfeld*, 916 F.2d at 576 (citing *Restatement (Second) of Agency* § 219).

■ In this case, it is undisputed that Coleman was neither acting within the scope of his employment nor acting or purporting to act as US West's agent in committing the alleged acts of sexual harassment. Therefore, in order to prove her claim against US West, Doi must prove that US West was negligent or reckless. Employer negligence subjecting the employer to liability for sexual harassment by its employees is defined as failing to take appropriate action to remedy or prevent a hostile or offensive work environment "of which management-level employees knew, or in the exercise of reasonable care should have known." *Id.* at 577. The district court determined that Doi failed to raise a genuine issue of material fact as to US West's negligence under this standard.

In order to review the district court's finding that Doi put forth insufficient evidence to establish US West's liability, we must first decide whether Doi may only establish such liability through evidence that US West knew or should have known of Coleman's behavior *towards Doi,* or whether Doi may also rely on evidence of US West's knowledge of Coleman's behavior *towards others* in establishing US West's liability for Coleman's injury to Doi.

Doi argues that she has provided ample evidence that US West knew or should have known of Coleman's harassment behavior so as to raise a genuine issue of material fact. In support of this, she includes allegations relating to Coleman's harassment of others. Doi argues that such evidence is relevant to prove notice under *Hicks*. However, *Hicks* only addressed the issue of harassment of co-workers as it related to proving the actual hostile environment—not the issue of notice. 833 F.2d at 1415–16. Doi also cites *Baker v. Weyerhaeuser Co.,* 903 F.2d 1342 (10th Cir. 1990), for the principle that numerous instances of harassment may establish notice. However, in *Baker,* all of the instances of harassment involved the plaintiff. *Id.* at 1345–46.

■ US West argues that Doi cannot rely on Coleman's harassment of co-workers to establish that US West knew or should have known Coleman was harassing Doi. US West provides no case law in support of this proposition, nor is it a defensible position under the law. We believe that US West may be put on notice if it learns that the perpetrator has practiced widespread sexual harassment in the office place, even though US West may not have known that this particular plaintiff was one of the perpetrator's victims.

■ In evaluating claims for negligence, proximate cause and foreseeability are typically employed to determine the scope of an employer's duty. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 42, at 273–74 (5th ed. 1984). We believe they are useful tools here in determining whether to look broadly at the perpetrator's conduct or narrowly at conduct directed toward the plaintiff only. The extent and seri-

ousness of the earlier harassment and the similarity and nearness in time to the later harassment should be factors in deciding whether to allow the evidence of harassment of others to prove notice.

In *Restatement (Second) of Agency* § 213, comment d, the Restatement addresses dangerous employees and emphasizes that employer's liability results if the employer:

had reason to believe that an undue risk of harm would exist because of the employment. The employer is subject to liability only for such harm as is within the risk. If, therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the harm is caused by the quality of the employee which the employer had reason to suppose would be likely to cause harm.

*Id.*, cmt. d. This approach also comports with the purposes of Title VII—prophylactically stopping workplace discrimination in addition to compensating victims. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417–18, 95 S.Ct. 2362, 2371–72, 45 L.Ed.2d 280 (1975).

■ Doi may, therefore, rely on US West's notice of any evidence of sexual harassment by Coleman that is similar in nature and near in time to his sexual harassment of Doi in order to raise a genuine issue of material fact as to whether US West knew or should have known of Coleman's conduct. *See Paroline v. Unisys Corp.*, 879 F.2d 100, 107 (4th Cir.1989), *rev'd on other grounds*, 900 F.2d 27 (4th Cir.1990) (imputing liability to employer who reasonably should have anticipated that the plaintiff would be the victim of sexual harassment by a particular male employee). Thus, we next review what US West knew or should have known about Coleman's behavior prior to the July 13 incident.

■ US West clearly knew about MacKinnon's and Gee's initial complaint to the Manager. The training manager's knowledge of and responses to Coleman's earlier conduct, and her alleged later report to the Manager, raise material factual issues as to US West's knowledge. Other issues of fact include whether MacKinnon and Gee made subsequent complaints to the Manager;[3] whether Valdez reported Coleman's harassment of her to the union representative; and whether the Manager herself was sexually harassed by Coleman.

In addition, we believe there is a genuine issue as to whether US West knew or should have known of Coleman's conduct based on the alleged overall pervasiveness of that conduct, involving perhaps as many as eight to ten employees. The Fourth Circuit has held that a plaintiff may prove an employer's knowledge of a sexually hostile work environment by proving that the harassment was "so pervasive that employer awareness may be inferred." *Katz v. Dole*, 709 F.2d 251, 255 (4th Cir.1983). A reasonable finder of fact could imply US West's knowledge of Coleman's conduct based on allegations that he had sexually harassed at least eight to ten different women during his three month tenure at US West.

Doi further argues that US West should be charged with knowledge that Coleman was harassing her because she reported that harassment to a union representative, pursuant to US West policy, prior to the final incident of harassment on July 13. The US West employee policy manual states that "internal review procedures" are available to employees who feel they have been subjected to sex discrimination and that these employees can:

discuss the problem with your immediate supervisor, the next level(s) of management, your union representative, where appropriate, your Establishment Manager, where appropriate, or the person designat-

---

**3.** US West argues that any alleged subsequent complaints to the Manager involved only threatening stares—not sexual harassment. However, we have previously adopted a standard that "any harassment or other unequal treatment of an employee or group of employees that would not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment un-

der Title VII." *Hicks*, 833 F.2d at 1415. We believe that Coleman's alleged threatening stares at MacKinnon and Gee, in apparent retaliation for the complaints about his sexual harassment, were sufficiently related to the prior alleged sexual harassment that they could be found to constitute continuing sexual harassment in violation of Title VII.

ed within your establishment to handle complaints. An alternative resource is the AA/EEO organization.... Contact one of these individuals if you: [h]ave a complaint, [or] [w]ant more information.

If you are not comfortable using the internal resources available to you, you have the option and choice to contact an external agency, i.e., city, state or federal, located in the area where you live or work.

Appellant's App. at 367. In her deposition, the US West Manager testified that, under this policy, an employee could report sexual harassment "to a union steward or a union vice-president or president." *Id.* at 347–48.

■ Doi asserts that she told the union vice-president, Metcalf, about the harassment before July 13 and, thereby, put US West on notice of Coleman's conduct towards Doi.[4] US West argues that even if Doi did discuss the harassment with Metcalf prior to July 13, this conversation did not constitute notice to US West. First, US West characterizes the alleged discussion between Doi and Metcalf as simply a casual conversation between friends, in which Doi had no intent to make a formal sexual harassment complaint. However, this argument, as to Doi's intent, is no more than a disputed issue of fact—a proper question for the finder of fact. We see no basis for determining Doi's intent as a matter of law.

Second, US West argues that Metcalf was not Doi's union representative and could not, therefore, satisfy the notice requirement. However, US West's own Manager testified that the policy providing for reporting of sexual harassment to union representatives included reporting to a union vice-president.

■ Third, US West argues that notice to a union representative cannot constitute notice to US West unless the union actually passed the information on to US West or an agency relationship existed between the two. There is no evidence that, prior to July 13, Metcalf passed any information to US West

relating to Coleman's harassment of Doi. Doi, instead, asserts that US West created an agency relationship with the union based on its representations of the union's "apparent authority" in its employee manual.

The Restatement (Second) of Agency § 27 explains that:

apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.

Doi argues that US West's employee policy manual constituted a written representation, reasonably interpreted by Doi, that US West consented to have union representatives receive complaints of sexual harassment on US West's behalf. Therefore, Doi argues, notice may be imputed to US West based on Doi's report to a union representative.

US West argues that it would be unreasonable to imply agency based on the manual because this would imply agency relationships with the *external* governmental entities which are referred to in the manual as alternatives to *internal* reporting. However, US West's designation of union representatives to receive complaints was described as part of the company's "*internal* review procedure," and the manual explicitly differentiated that from *external* entities to whom complaints could also be directed. On the summary judgment record before us, we agree with Doi that statements to a union vice-president could constitute notice to US West under US West's published employee policy manual.

Therefore, we hold that, based on MacKinnon's and Gee's continued complaints about Coleman, Valdez's report to her union representative of harassment by Coleman, allegations that the US West Manager herself was harassed by Coleman, the overall pervasive nature of the complaints about

---

4. This factual assumption warrants some scrutiny at trial. Although this alleged conversation is referenced in affidavits by Doi and Metcalf, there was no reference to it (and perhaps even inferences that there was no such conversation) in the complaint and in the earlier depositions of Doi

and Metcalf. However, credibility determinations should not be made on summary judgment. For now, Doi's and Metcalf's affidavits are sufficient to create a genuine issue of material fact as to whether such a conversation took place.

Coleman, and Doi's report of Coleman's conduct to the union vice president, there are genuine issues of material fact such that a reasonable finder of fact could determine that US West knew or should have known that Coleman was engaging in sexual harassment of female US West employees and that he had continued such conduct notwithstanding previous remedial actions taken by US West.

### 3. Whether US West Took Appropriate Remedial Action

■ Lastly, we examine whether—considering what it knew or should have known—US West took appropriate remedial action in response to Coleman's behavior. The district court found, as an undisputed fact, that US West took prompt and effective remedial action with respect to MacKinnon's and Gee's initial report of sexual harassment to the Manager and with respect to Doi's report of the July 13 incident. However, because we hold that there is a disputed issue of fact as to whether US West knew or should have known of other multiple and continuing reports of harassment of various female employees by Coleman before July 13, we also hold that there is a genuine issue of material fact as to whether US West's remedial actions or lack thereof during the period prior to July 13 were appropriate or whether US West was negligent, either in allowing such conduct to continue or in failing to learn of such continued behavior in a timely fashion so that it could respond appropriately.

Therefore, we reverse the decision of the district court dismissing Doi's Title VII claim for hostile work environment sexual harassment. We remand this claim to the district court for further proceedings consistent with this analysis.

### B. State Law Claims and the Utah Worker's Compensation Statute

■ The district court concluded, as a matter of law, that Doi's state law claims for (1) failure adequately to train, supervise, or control and (2) intentional infliction of emotional distress were barred by the exclusivity provisions of the Utah Workers' Compensation Act, Utah Code Ann. § 35–1–60, and dismissed these claims. Utah law bars all claims (other than claims under the Utah Worker's Compensation Act) by employees for injuries arising out of and in the course of employment, except those based on certain intentional torts. *Bryan v. Utah Int'l*, 533 P.2d 892, 894 (Utah 1975) (providing for exception to general exclusivity); *see also Lantz v. National Semiconductor Corp.*, 775 P.2d 937, 938–40 (Utah App.1989) (defining excepted "intentional" conduct as "actual deliberate intent to injure").

Doi attempts to avoid this bar by stating both claims in terms of intentional acts by US West. Appellant's App. at 16 (Doi entitled to damages as a result of US West's "willful, malicious or intentional conduct" in failing adequately to train, supervise or control Coleman); 18 (US West's own conduct in failing to deal properly with Coleman despite what it knew about his acts of sexual harassment was "atrocious and utterly intolerable in a civilized community and so extreme as to be beyond all bounds of decency"). Doi has neither alleged nor provided evidence that US West deliberately intended harm or injury to Doi.

■ The Utah Court of Appeals has clearly stated that the scope of the exception to workers' compensation exclusivity is limited to claims that allege a defendant's deliberate intent to bring about injury. *Lantz*, 775 P.2d at 940, n. 5. Intentional actions, coupled with knowledge that the injurious result was substantially certain to occur, are not sufficient to avoid the bar. *Id.* at 939–40. Doi argues that this is contrary to the Utah Supreme Court's decisions on this issue, and that such an application would violate Doi's state constitutional rights by depriving her of any remedy under either the workers' compensation statute or tort law. Appellant's Reply Br. at 20–21. We disagree on both counts.

In *Bryan*, the Utah Supreme Court adopted the exception for certain intentional torts without defining "intentional" as clearly as the court of appeals does in *Lantz*. However, nothing in *Bryan* conflicts with the decision in *Lantz*. In fact, the language in

*Bryan* and its application support the decision reached in *Lantz*. *Bryan*, in first addressing whether a claim against a co-worker was barred, describes the exception based on an "intentional act," but then goes on to justify the exception based on "seek[ing] redress from the one intending harm," "deterring intentional injury," and "serv[ing] no social purpose to allow an employee to intentionally injure" another employee. 533 P.2d at 894. The court then went on to apply the exception to Bryan's claim against his employer, stating that he had alleged injurious intentional misconduct which had been going on for some time and was known to his employer. *Id.* However, the court reasoned, there was no showing that the employer "intended the injury" or that the injurious act was directed or intended by the employer. *Id.* at 894–95. *Bryan* may not bar Doi's claims as clearly as *Lantz* does. However, *Lantz* expressly bars Doi's claims because they lack any allegation of US West's intent to injure Doi, and *Lantz* is a consistent and logical extension of *Bryan*.[5]

Doi has not alleged that US West intended that Doi be harmed by its conduct, nor is there any indication that she could do so. Therefore, based on the holding in *Lantz*, we affirm the decision of the district court that Doi's state common law tort claims are barred by the exclusivity provision of the state workers' compensation statute.[6]

## III. CONCLUSION

Because Doi has raised genuine issues of material fact as to whether US West knew or should have known of Coleman's harassment of Doi and her co-workers, and whether US West failed to take appropriate remedial action, we REVERSE the district court's dismissal of Doi's claim for sexual harassment in violation of Title VII and REMAND this claim for further proceedings consistent with this opinion. We AFFIRM the district court's dismissal of Doi's state tort claims as barred by the Utah workers' compensation exclusivity provision.

---

**5.** We find no merit to Doi's claim that *Lantz*'s interpretation of *Bryan* would leave her without a remedy.

**6.** Because we hold that Doi's state common law claims are barred by the exclusivity provision of the Utah Worker's Compensation Statute, we need not address the merits of the individual claims.