Cindy **CERKA,** Plaintiff,

v.

**SALT LAKE COUNTY,** Aaron Kenard, individually and/or in his official capacity as Salt Lake County Sheriff, "A", "B", "C", "D", and "E", Defendants.

No. 97–CV–203.

United States District Court,
D. Utah,
Central Division.

Nov. 25, 1997.

Kathryn Collard, Salt Lake City, UT, for Plaintiff.

Patricia Marlowe, Salt Lake County Attys. Office, for Defendants..

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, Senior District Judge.

This matter came before the Court on defendants' motion to dismiss. Plaintiff was represented by Kathryn Collard and defendants were represented by Patricia Marlowe of the Salt Lake County Attorney's Office. The Court heard arguments of counsel and granted the parties leave to file supplemental memorandums, after receipt of which the motion was deemed submitted for decision and taken under advisement. Being now fully advised, the Court enters its Memorandum Decision and Order.

### FACTUAL BACKGROUND

In November of 1992, plaintiff began to experience respiratory problems while employed as a nurse at the Salt Lake County Metro Jail. On March 6, 1993, plaintiff collapsed and was taken to the hospital. Plaintiff alleges that her collapse was the result of a severe and permanent brain injury caused by a ventilation system contaminated with sewer leakage in the Salt Lake County Metro Jail. Plaintiff further alleges that defendants knew raw sewage had seeped into the ventilation system, and that it could cause respiratory problems in employees and inmates located within the contaminated facility. Additionally, plaintiff alleges that defendants knew that plaintiff, other Jail employees, and inmates were experiencing illness as the result of being exposed but continued to require individuals to work in the contaminated areas. Plaintiff further alleges that defendants increased her vulnera-

bility by reassuring her that they were taking prompt action to abate the conditions of contamination in the Jail. On March 6, 1997, plaintiff served defendants with an amended complaint asserting four claims: intentional and/or negligent operation of the sewer and ventilation system; intentional breach of duty to clean and maintain the sewer and the ventilation system; intentional and/or negligent ownership, operation, management, and inspection of the jail; and violations of plaintiff's state and federal constitutional rights.

### Standard of Review on Motion to Dismiss

A motion to dismiss pursuant to F.R. Civ. P. 12(b)(6) may be granted only if the plaintiff "fails to state a claim upon which relief may be granted." Plaintiff's factual allegations are presumed to be true and are construed in a light most favorable to the plaintiff. *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir.1991).

### ANALYSIS

The Court will address plaintiff's negligence, intentional tort, and constitutional claims seriatim.

### State Negligence Claims

Plaintiff's right to receive compensation based on defendants' alleged negligence for injuries sustained because of her exposure to the ventilation system at her place of work is exclusively covered by the Utah Worker's Compensation Act. That act states in relevant part:

> The right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee, whether resulting in death or not, shall be the exclusive remedy against the employer and shall be the exclusive remedy against any officer, agent, or employee of the employer and the liabilities of the employer imposed by this act shall be in place of any and all other civil liability, whatsoever, at common law or otherwise .... Utah Code Ann. § 35-1-60.

The Utah Workers' Compensation Act allows suits for damages only against persons other than the employer, officer, agent, or employee of the employer:

When any injury or death for which compensation is payable under title shall have been caused by the wrongful act or neglect of a person other than an employer, officer, agent or employee of the employer, the injured employee ... may claim compensation and the injured employee ... may also have an action for damages against the third person. Utah Code Ann. § 35–1–62(1).

Consistent with these provisions, the Supreme Court of Utah in *Gourdin v. Sharon's Cultural Education Recreational Association*, 845 P.2d 242 (1992) held that workers' compensation is the sole remedy for a negligence action against parties having employment relations. See also *Mitchell v. Rice*, 885 P.2d 820, 823 (Utah App.1994).

Based upon the foregoing, this Court rules that plaintiff's only remedy based on negligence against the named defendants is worker's compensation. Accordingly, plaintiff's negligence claims should be dismissed.

### State Intentional Tort Claims

■ In *Bryan v. Utah International*, 533 P.2d 892, 894 (Utah 1975) the Utah Supreme Court interpreted § 35–1–60, as not prohibiting an action for injuries sustained as the result of *intentional* acts, stating that the Act should not be used as a "shield for such wrongdoing." In further refinement of Utah law, the Utah Court of Appeals in *Lantz v. National Semiconductor Corp.*, 775 P.2d 937, 940 (Utah App.1989), held that for a defendant to be held liable for an "intentional act,"

she must have "manifested a deliberate intent to injure." The *Lantz* court rejected the argument that the Utah Worker's Compensation Act can be avoided simply on a showing of knowledge coupled with the substantial certainty that injury will result.[1]

■ In the present case, plaintiff has not shown that defendants had a conscious and deliberate intent to injure her. Plaintiff's assertions that defendants committed intentional torts because plaintiff was required to work in an environment in which they had knowledge that the ventilation system had been contaminated falls short of the showing required under *Bryan* and *Lantz*.

Plaintiff attempts to distinguish the instant case from *Lantz*, citing *Gulden v. Crown Zellerbach Corp.*, 890 F.2d 195 (9th Cir.1989). However, in *Gulden*, the employer knew the workers *were exposed* to toxic PCB concentrations that greatly exceeded the levels authorized by the Environmental Protection Agency and *purposely chose employees who were unaware of the risks* to perform the clean-up. *Id.* at 197. In contrast, plaintiff and other workers in this case were notified that workers in the jail *could* be exposed to a contaminated ventilation system and that the Health Department had such concerns.[2] The court recognized this difference in *Gulden*, stating:

worker's compensation [is] held to be the exclusive remedy [when] the only inference that could be drawn from the evidence [is]

---

**1.** "We accordingly reject Lantz's argument that knowing to a substantial certainty that injury will follow is sufficient to invoke the exception contemplated in *Bryan* to the exclusiveness of the workers' compensation remedy." *Lantz v. National Semiconductor Corp.*, 775 P.2d 937, 940 (Utah App.1989).

**2.** The minutes of the jail medical staff meeting on January 19, 1993 state that employees were warned that the "County Health Department will be checking the air quality in the Jail [due to] complaints of respiratory problems." The Salt Lake County Health Department inspected the air quality of the Salt Lake County Jail on January 20, 1993 and reported its findings to C. David Glad, Captain of the Salt Lake County Jail, in a letter dated January 25, 1993. The Health Department findings were promptly read to the staff and are as follows:

Some potentially serious conditions were discovered within the jail's ventilation system that may affect public/employee health and should

be corrected as soon as possible. Potential raw sewage has been leaking in the concrete tunnel that brings fresh air into the jail and is running down the walls and puddling on the floor. This material is dripping from the main 10 inch sewer pipe going to the street. Sewer gas and other sewer grown bioaerosols ... were potentially contaminating both the jails' fresh air and return air supplies from four sources. A basement concrete air return tunnel has been flooded with raw sewage in the past and now the material may become airborne.... Numerous medical studies have linked bioaerosols with serious respiratory illnesses and other allergic symptoms such as eye, nose, throat, and lung irritation, bronchitis, pneumonitis and similar illnesses. The conditions are present for bacterial spores, molds, and fungi contaminating the jail's indoor air.

that the employer's actions constituted 'mere carelessness, recklessness, or negligence.' *Id.* at 197. (citations omitted).

This court rules that defendants' actions do not constitute intentional torts which fall under any exception to the Worker's Compensation Act. Accordingly, plaintiff's intentional tort claims should be dismissed.[3]

### Constitutional Claims

Plaintiff has withdrawn her claim of constitutional violations based upon the violation of the Equal Protection Clause, because of insufficient allegations. However, plaintiff claims a cause of action under 42 U.S.C. § 1983 because of alleged violations of the Due Process Clause.

■ Plaintiff alleges in her amended complaint that defendants violated her procedural due process rights. Procedural due process requires fair practices and procedures allowing an opportunity to present objections if a substantive right in life, liberty, or property is violated. Therefore, the court must first determine whether plaintiff had such a substantive right which was violated. If so, the court would be required to determine what type of process is required. such as an evidentiary hearing, notice, or a right to be heard by a neutral party. However, if plaintiff does not have a substantive constitutional interest at stake, it follows that there is no deprivation of a procedural right.

■ Plaintiff bases her substantive due process claims on defendants' alleged failure to provide plaintiff with a "safe and healthful workplace, as guaranteed pursuant to the federal and state constitution and laws..." (Amended Complaint, paragraph 51,) and her alleged deprivation of her state created property interest as a "merit employee."[4] (Amended Complaint, paragraph 52.) Plaintiff claims that defendant's failure to provide her with a "safe and healthful workplace" violated her alleged property interest therein

and caused her to suffer physical defects that prevent her from fulfilling her position as a "merit employee." It follows that plaintiff's alleged property interest constitutes a part of an alleged substantive due process claim, and that if no such substantive due process claims exist no procedural due process claim to protect it arises under the Fourteenth Amendment.

The Supreme Court has expressly stated that

"the Due Process Clause does not impose an independent federal obligation upon municipalities to provide certain minimal levels of safety and security in the workplace..."

*Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). In *Collins,* the plaintiff asserted a § 1983 claim based upon an alleged violation of the due process clause when her husband was killed in a workplace accident. Plaintiff concedes that "[t]he Supreme Court's decision in *Collins* makes it abundantly clear that under the Federal Constitution, the Fourteenth Amendment confers no such substantive due process right.[5]"

Plaintiff attempts to distinguish the instant case from *Collins* by citing the Ninth Circuit case of *L.W. v. Grubbs,* 974 F.2d 119 (9th Cir.1992). In that case, plaintiff established § 1983 liability against defendants who were relying upon *Collins* because they had used their authority as state correctional officers to place plaintiff, a registered nurse, in a position of known danger where she was attacked and raped by an inmate with a known propensity for violence against women. The *L.W.* court distinguished *Collins* thusly:

"L.W. has alleged that she was deprived of her liberty because Defendants, acting in their capacity as state correctional officers,

**3.** Because the Court's ruling is dispositive as to the state law intentional tort claims and the state law negligence claims, it is unnecessary to determine whether the Governmental Immunity Act, Utah Code Ann. § 63–30–9, bars such claims, or whether the statute of limitations was validly asserted or waived.

**4.** "Property interests are not created by the Constitution." *Board of Regents v. Roth,* 408 U.S.

564, 571, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.*

**5.** Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss at 21.

affirmatively created a significant risk of harm to her, and did so with a sufficiently culpable mental state." *Id.*

In the case at bar, however, defendants did not increase plaintiff's vulnerability to the jail's conditions by misrepresenting the risks in the jail. To the contrary, plaintiff and other employees were advised of the Health Department's concerns about the jail's potential sewer and air problems and *possible* health threats.[6] In addition, unlike *L.W.,* plaintiff is not attempting to recover damages for injuries resulting from actions of a third party.

In *Lewellen v. Metropolitan Government of Nashville and Davidson County Tennessee,* 34 F.3d 345 (6th Cir.1994), the plaintiff was injured at the site of a school construction project by a high voltage conductor line. The Sixth Circuit rejected plaintiff's claim on the basis that the city did not "make a deliberate decision to inflict pain and bodily injury on the plaintiff." *Id.* at 348. The case at bar is similar in that we are not confronted with an intentional government act deliberately calculated to injure plaintiff. The Supreme Court has consistently held that due process is only violated by intentional acts of government officials, not by negligence or carelessness. See *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *DeShaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 201–02, 109 S.Ct. 998, 1006–07, 103 L.Ed.2d 249 (1989); *Daniels v. Williams,* 474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). The Supreme Court's decision in *Daniels* provides an excellent illustration of this principle. In *Daniels* a prisoner sued under § 1983 claiming that prison officials negligently deprived him of property without due process of law. The Supreme Court held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Id.* at 328, 106 S.Ct. at 663. The Supreme Court elaborated that to hold otherwise would "not only trivialize, but grossly distort the meaning and intent of the Constitution." *Id.* The Tenth Circuit has also so ruled:

"[t]he Due Process Clause 'is not a guarantee against incorrect or ill-advised [government] decisions' nor does it guarantee municipal employees a workplace that is free of unreasonable risks."

*Uhlrig v. Harder,* 64 F.3d 567, 573 (10th Cir.1995), quoting *Collins,* 503 U.S. at 129, 112 S.Ct. at 1070.

Based on the principles of *Collins, Lewellen, Daniels,* and *Uhlrig* this Court holds that plaintiff does not have a substantive life, liberty, or property due process claim. There is no constitutionally protected interest in a safe work environment under *Collins* and its progeny.

Based upon the foregoing, it is hereby

ORDERED that defendants Motion to Dismiss is GRANTED.

Counsel for defendants is directed to prepare and lodge with the court within 30 days a form of judgment consistent with this opinion, after first complying with the local rule 206(b).