**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 30 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

PRISCILLA ANN MAINE,

        Plaintiff-Appellant,

v.

OKLAHOMA DEPARTMENT OF
CORRECTIONS, sued as State of
Oklahoma ex rel.; BOBBY BOONE,
Warden, Mack Alford Correctional
Center; BRUCE HOWARD, Deputy
Warden, Mack Alford Correctional
Center; WILLIS VIEUX, Chief of
Security, Mack Alford Correctional
Center; CARL GOODSON, Officer
at Mack Alford Correctional Center,
in their official capacities and
individually,

        Defendants-Appellees.

No. 97-6027
(D.C. No. 95-CV-936)
(W.D. Okla.)

---

ORDER AND JUDGMENT[*]

---

Before TACHA, McKAY, and BALDOCK, Circuit Judges.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff Priscilla Ann Maine appeals the district court's grant of summary judgment on her Title VII, 42 U.S.C. §§ 2000e to 2000e-17, and 42 U.S.C. § 1983 gender discrimination and retaliation claims in favor of defendants, the State of Oklahoma, the Oklahoma Department of Corrections and four individual department officials. She also appeals the grant of summary judgment in favor of the four individual department officials on a § 1983 claim that they violated her substantive due process constitutional rights.

We review de novo whether defendants are entitled to summary judgment, applying the same legal standards applied by the district court under Fed. R. Civ. P. 56(c). See Hirase-Doi v. U.S. West Communications, Inc., 61 F.3d 777, 781 (10th Cir. 1995). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "'When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" Hirase-Doi, 61 F.3d at 781 (quoting Applied

Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990)). We affirm.

## I. Background

Plaintiff, a librarian employed at the Mack Alford Correctional Center (MACC), was raped and assaulted by an inmate on June 23, 1993, while she was alone and on duty in the library. Plaintiff had just locked the library for the mid-day inmate count, remaining inside to eat lunch. However, an inmate had hidden under a library table, and he assaulted plaintiff, dragged her into a store room and raped her. Plaintiff had been employed at MACC since 1974, and had worked as a prison librarian at MACC since 1987. When plaintiff took the librarian job, she knew that she would have contact with inmates, including some convicted of violent crimes. She had worked in the library without any other MACC staff since late 1990.

Plaintiff had, on numerous occasions, complained to MACC officials about the lack of security provided to her. Her complaints included concerns that security officers were not making periodic checks on her in the library, and that her telephone was sometimes not working for days at a time. Plaintiff also complained about inmates who were displaying overt sexual behavior towards her in the library, and she alleges that defendants never disciplined these inmates for

their behavior. Plaintiff requested, but did not receive, a two-way radio or a body alarm to protect her.

Several weeks before she was raped, the prison mail clerk intercepted an obscene and threatening letter directed at plaintiff. MACC officials identified, and disciplined, the inmate who sent the letter, though he was not the inmate who later raped plaintiff. Although MACC's deputy warden directed the chief of security to provide more security checks for the library after the threatening letter, this directive was not carried out. Moreover, although MACC's policy statement required security officers to check the library at least once an hour, records from the thirty days preceding the date plaintiff was raped demonstrate that security officers checked the library only once a day on twenty-two of those days, and only twice a day on the other eight days. Plaintiff alleged that in the six years preceding the rape, the required hourly security checks on her had never been made.

Plaintiff attributes the lack of security provided to her to retaliation for a 1989 sexual harassment complaint she made against defendant Carl Goodson, a MACC correctional officer. In September 1989, Goodson put his arm around plaintiff's waist in a sexually offensive manner in front of an inmate. Plaintiff filed a written complaint against Goodson, and Goodson was given a letter of reprimand and apologized to her. Plaintiff alleged that after her complaint against

Goodson, defendants retaliated against her by creating a dangerous and hostile work environment by not disciplining inmates who displayed overt sexual behavior towards her and by isolating her without adequate security and means of communication.

Plaintiff filed suit, alleging that defendants' failure to provide her with appropriate security caused her rape, and that the individual defendants' actions deprived her of her constitutional right to liberty without due process of law. The district court granted defendants' motion for summary judgment, finding that plaintiff had not shown the existence of hostile work environment sexual harassment or retaliation in violation of Title VII or a substantive due process violation.

## II. Title VII Claims

We agree with the district court that plaintiff did not present evidence showing the existence of a hostile work environment or retaliation in violation of Title VII. A plaintiff may prove the existence of hostile work environment sexual harassment in violation of Title VII "where sexual conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." Hirase-Doi, 61 F.3d at 782 (quotation omitted). "For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment." Id. (quotation omitted).

The only evidence of sexual harassment plaintiff presented was the isolated Goodson incident, which, as the district court correctly concluded, is neither severe nor pervasive enough to create an objectively hostile work environment. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993) (identifying factors to be considered in determining whether environment is hostile). The actions of those inmates who behaved in an overtly sexual manner in front of plaintiff and sent her the obscene letter cannot, as the district court concluded, be attributed to defendants. See Hirschfeld v. New Mexico Corrections Dep't, 916 F.2d 572, 579-80 (10th Cir. 1990). The record demonstrates MACC officials did discipline many of these inmates in response to plaintiff's complaints, including the inmate who wrote the threatening letter.

Plaintiff also failed to present evidence that other similarly-situated men were treated differently than she. Although plaintiff complained of continuing lax security measures, there is nothing in the record to indicate the security provided to her differed from that provided to other similarly-situated MACC employees. The record demonstrates that all of the areas required to be checked hourly were actually checked only once or twice a day; thus, the lack of periodic security checks was not unique to plaintiff. It is uncontested that no MACC

employee had a body alarm, and that two-way radios were assigned on a first-come-first-served basis.

We also agree with the district court that plaintiff did not present evidence showing the existence of retaliation in violation of Title VII. In order to establish a retaliation claim under Title VII, a plaintiff initially must establish a prima facie case of retaliation by establishing "(1) protected opposition to Title VII discrimination or participation in a Title VII proceeding; (2) adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection between such activity and the employer's adverse action." Berry v. Stevinson Chevrolet, 74 F.3d 980, 985 (10th Cir. 1996). "The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Burrus v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir. 1982) (emphasis supplied). An inference of retaliatory motive can be made only if there is a close temporal proximity between the bringing of charges and the adverse action. See Candelaria v. EG & G Energy Measurements, Inc., 33 F.3d 1259, 1262 (10th Cir. 1994).

The district court correctly found that plaintiff failed to provide evidence demonstrating a causal connection between any adverse action and plaintiff's complaint against Goodson, which occurred four years prior to the assault and

rape of plaintiff. There is nothing in the record to show that security levels provided to plaintiff changed after the Goodson incident other than the library reorganization which caused her to be working alone. That change did not occur until late 1990, almost two years after the Goodson complaint. According to plaintiff, MACC officials had not been making the required periodic security checks for six years, well before the Goodson incident. Moreover, as noted above, there is nothing in the record to indicate the security provided to plaintiff differed from that provided to similarly-situated MACC employees. Accordingly, plaintiff failed to establish a prima facie case of retaliation under Title VII.

### III. Substantive Due Process Claim

The district court concluded plaintiff failed to establish that defendants violated her right to substantive due process under the Fourteenth Amendment and, even if plaintiff had established a constitutional violation, the defendants were entitled to qualified immunity because it was not clearly established in June 1993 that the alleged conduct would violate plaintiff's substantive due process rights. We agree.

We must decide first whether plaintiff asserted the violation of her due process rights. See Siegert v. Gilley, 500 U.S. 226, 231-33 (1991) (in reviewing claims of qualified immunity, court must first determine whether plaintiff asserted a violation of a constitutional right at all, and if so, then determine whether that

right was clearly established).  Generally, state actors are liable under the due process clause only for their own acts and not for the violent acts of third parties.  See Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995).  We have recognized an exception to this general rule, relied upon here, referred to as the "danger creation" theory.  Id.  It provides that a state may be liable for an individual's safety "if it created the danger that harmed the individual. . . ." Id.

In Medina v. City & County of Denver, 960 F.2d 1493, 1496-97 (10th Cir. 1992), we concluded that a state actor could be held responsible under § 1983 for harm caused by a third person if he acted in reckless disregard of the rights of a limited group.  Later, in Uhlrig, we reexamined the elements of a substantive due process claim in light of a subsequent Supreme Court opinion, Collins v. City of Harker Heights, 503 U.S. 115 (1992).  In Uhlrig, where a mental hospital therapist was killed by a patient, we held that a plaintiff asserting such a claim must show that the challenged conduct was "reckless" as defined by Medina, and must further show that "such conduct, when viewed in total, is conscience shocking." Uhlrig 64 F.3d at 574 (citing Collins, 503 U.S. at  126-30).[1]

_____

[1]    "[T]o satisfy the 'shock the conscience' standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power.  That is, the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Uhlrig, 64 F.3d at 574.

-9-

We applied Uhlrig's conscience-shocking standard in Liebson v. New Mexico Corrections Dep't, 73 F.3d 274 (10th Cir. 1996), where, like here, a prison librarian was raped by an inmate, and alleged that corrections officials violated her substantive due process rights by recklessly failing to provide her with adequate security. We concluded that the defendants' negligence in removing a corrections officer from the library for the librarian's protection was not "'so egregious, outrageous and fraught with unreasonable risk so as to shock the conscience.'" Id. at 276 (quoting Uhlrig, 64 F.3d at 576).

In this case, the district court applied our Liebson analysis, and found, on similar facts, that plaintiff failed to present evidence that the defendants' conduct was conscience-shocking. However, the Supreme Court has recently granted certiorari in a case in order to address the legal standard of conduct necessary to establish a substantive due process violation in a police pursuit case. See Lewis v. Sacramento County, 98 F.3d 434 (9th Cir. 1996), cert. granted, 65 U.S.L.W. 3793, 3798 (U.S. June 2, 1997) (No. 96-1337). Circuit courts are divided as to whether a state actor's conduct must display "deliberate indifference" or "reckless disregard," as we initially held in Medina, or must meet the higher "shock the conscience," standard, as we subsequently adopted in Uhlrig and Liebson. Nevertheless, we conclude that there is no need to abate this case pending the Lewis decision, because we find that defendants' conduct in this case did not rise

-10-

to the level of either the "conscience-shocking" standard or the "deliberately indifferent or reckless disregard" standard.[2]

"An act is reckless when it reflects a wanton or obdurate disregard or complete indifference to risk, for example 'when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death' or grievous bodily injury." Medina, 960 F.2d at 1496 (quoting Archie v. City of Racine, 847 F.2d 1211, 1219 (7th Cir. 1988) (en banc)). Plaintiff's evidence does not show that defendants' conduct displayed such indifference or recklessness.

The evidence supports, at most, a claim that defendants' failure to provide a reasonably safe work environment was negligent, which, as the Supreme Court explained in Collins, is insufficient to support a substantive due process violation claim. See 503 U.S. at 126. In Collins, the Supreme Court held that a governmental employer's failure to warn or train its employees about known hazards in the workplace did not support a substantive due process claim. It

---

[2]     We issued an opinion in Williams v. City & County of Denver, 99 F.3d 1009 (10th Cir. 1996), vacated & reh'g en banc granted, No. 94-1190 (10th Cir. Mar. 3, 1997), in which we held that, under Collins, 503 U.S. 115 "a substantive due process violation requires (1) that the defendant act with reckless intent, and (2) that the defendant's conduct shock the conscience." Williams, 99 F.3d at 1015. We subsequently vacated our opinion in Williams, pending the Supreme Court's decision in Lewis.

emphasized the importance of respecting the competing social, political and economic forces that shape policy-makers' public safety decisions, and explained that "[t]he Due Process Clause 'is not a guarantee against incorrect or ill-advised personnel decisions.'" Id. at 129-29 (quoting Bishop v. Wood, 426 U.S. 341, 350 (1976).

Here, as in Collins, plaintiff's evidence that defendants failed to provide her with adequate security does not constitute a constitutionally arbitrary deprivation of her life and liberty. See Collins, 503 U.S. at 129-30. The record indicates that MACC lacked sufficient security officers to make the required hourly security checks of the library and other prison areas, and lacked funds to provide its employees with sufficient two-way radios or body alarms. As the district court correctly found, "there is no evidence that defendants intentionally isolated plaintiff or took affirmative steps to place her in danger. . . ." Dist. Ct. order at 8. Nor do we find that their conduct reflects a wanton or obdurate disregard or complete indifference to risk.

Moreover, we agree with the district court that, even if we assume for the purpose of argument that plaintiff had proven a cognizable § 1983 claim, she failed to demonstrate that the due process rights at issue were so clearly established in June 1993 that reasonable officials in defendants' situation would

-12-

have understood their conduct violated those rights.  See Liebson, 73 F.3d at 277-78.  Thus, defendants are entitled to qualified immunity.

Accordingly, the judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.


Entered for the Court


Bobby R. Baldock
Circuit Judge