**Raymond SMALLS, Plaintiff,**

v.

**ALLSTATE INSURANCE CO. and William Smith, Defendants.**

**No. 01 Civ. 5412(BSJ).**

United States District Court,
S.D. New York.

Oct. 10, 2005.

Dana Lynn Tolento Colao, Jennine Di-Somma, Saiber, Schlesinger, Satz & Goldstein, LLC, Newark, NJ, Michael Harris Freeman, Greenberg, Dauber, Epstein & Tucker, Newark, NJ, for Allstate Insurance Co.

Michael Harris Freeman, Greenberg, Dauber, Epstein & Tucker, Newark, NJ, for William Smith.

Robert K. Marchese, Brooklyn, NY, for Raymond Smalls.

### *ORDER*

JONES, District Judge.

On June 15, 2001, Plaintiff Raymond Smalls ("Plaintiff") filed a five-count Complaint against Defendants Allstate Insurance Company ("Allstate") and former Allstate manager William Smith ("Smith"), alleging discrimination, a hostile work environment, intentional infliction of emotional distress, and retaliation based on race.[1] Defendants Allstate and Smith moved for summary judgment on all counts. For the reasons set forth below, Defendants' motions are granted and the Complaint is dismissed in its entirety.

### Background

Plaintiff has been employed by Allstate in various capacities and in various loca-

---

1. The Complaint set forth four claims against both Allstate and Smith and a fifth claim of retaliation asserted solely against Allstate.

tions in the New York metropolitan region since 1986. In October 1997, Plaintiff received a promotion to the position of Frontline Performance Leader ("FPL"), and, as a result, was transferred from the Elmhurst office to the Roslyn office. Shortly thereafter, the Roslyn Auto Claims Unit, which included Plaintiff and approximately 24 other people, was relocated to Allstate's office in Hicksville, where Defendant Smith was the Market Claims Manager ("MCM"). (DiSomma Aff., Exhs. B & D, Smalls Tr. 22–24, Smith Tr. 24).

In January 1999, Allstate's Resolution Hotline received two anonymous calls complaining about Smith's unprofessional behavior. (DiSomma Cert., Exhs. J & K, Exh. I, Reavis Tr. 35–36). The first anonymous caller complained that Smith used profane language and acted unprofessionally because Smith believed the caller was not performing his job properly. (DiSomma Aff., Exh. J). The caller, who was later learned to be Plaintiff, did not mention race or racial discrimination. (DiSomma Aff., Ex. B, Smalls Tr. 151). The second anonymous caller, later identified as Allstate employee Liz Glidden, complained that Smith "belittled" Plaintiff "in the presence of other employees." (DiSomma Aff., Exh. K, Glidden Tr. 16). Glidden later testified that she called the Hotline after she had witnessed an incident in January 1999 between Plaintiff and Smith where they were "yelling loudly at each other." (Glidden Tr. 11–12).

In February 1999, Frontline Performance Expert ("FPE") Vinnie Friscia sent a five-page letter to Human Resources Manager Susie Reavis describing several incidents in which Smith used profanity and subjected him to verbal abuse and humiliation. (DiSomma Aff., Exh. H). As a result of these complaints, Allstate's Human Resources Department opened an investigation into Smith's workplace behavior.

(DiSomma Aff., Exh. I, Reavis Tr. 42). All of the FPLs from the claims units in the Hicksville office were interviewed and an Investigation Summary Report dated March 16, 1999 summarized the investigation. (DiSomma Aff., Exh. M). According to Reavis, the complaints of the Hicksville FPLs included the following: (1) Smith regularly engaged in disparaging and insensitive conduct toward his managers, using profane and abusive language; (2) three managers from Roslyn stated that they had a difficult time adjusting to Smith's tough and demanding behavior; (3) one minority manager was treated particularly harshly and was belittled, yelled at, and cursed at by Smith in front of other employees.

Reavis recommended the immediate termination of Smith's employment based on the findings of the investigation that his treatment of the managers in the Hicksville office was unprofessional. Smith submitted a letter of resignation upon learning the results of the investigation, and ceased working at Allstate on or about March 19, 1999. (DiSomma Aff., Exh. D, Smith Tr. 34).

During the investigation of Smith, Robert Bond, an FPE in the Elmhurst office, requested that Plaintiff be transferred to Elmhurst to fill a vacant FPL position in their office. Smith's supervisor, Joel McDonald, approved the transfer, subject to confirmation that Plaintiff wanted to be transferred to Elmhurst. Allstate never confirmed Plaintiff's desire for a transfer to Elmhurst. Upon being transferred, Plaintiff complained that he was unhappy because the transfer increased his commute to work, and four weeks after his transfer, Plaintiff was returned to his position in Hicksville. (DiSomma Aff., Exh. C, Smalls Tr. 324, McDonald Tr. 37, Bond Aff. ¶ 6).

On March 15, 1999, also during the investigation of Smith, Plaintiff filed a complaint with the New York State Division of Human Rights (the "NYSDHR") alleging that Allstate unlawfully discriminated against him based on his race in violation of New York Human Rights Law, Section 296 as evidenced by his transfer to the Elmhurst office, his verbal harassment by Smith, and racially derogatory statements made to other employees ("NYSDHR Complaint I"). (DiSomma Aff., Exh. O).

After Smith ceased working at Allstate, Plaintiff continued to work in the Hicksville office as an FPL. In April 1999, Debbie Fiske was appointed MCM at the Hicksville office. In October 1999, Allstate underwent a nationwide Personnel Reorganization, reducing the overall number of managerial positions, including FPLs, and redeploying them to service-oriented positions. Fiske's evaluation of the leadership skills of the FPLs on her staff resulted in Plaintiff and two other FPLs being redeployed to senior claim adjuster positions. The redeployment did not impact Plaintiff's salary or his ability to receive a salary increase. As a result of the redeployment, Plaintiff promptly filed another complaint with the NYSDHR ("NYSDHR Complaint II"), alleging retaliation for filing his NYSDHR Complaint I. (DiSomma Aff., Exh. X). The NYSDHR dismissed both complaints. (DiSomma Aff., Exh. Y).

On June 15, 2001, Plaintiff filed a five-count Complaint in the District Court for the Southern District of New York against Allstate alleging discrimination, a hostile work environment, intentional infliction of emotional distress, and retaliation based on race ("Complaint").

## Discussion

### I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment should "be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." To prevail, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party does so successfully, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the non-movant cannot rely on "conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 535 (2d Cir.1993).

The Second Circuit has warned that district courts should be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (*quoting Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994)). That said, a court may grant a defendant's motion for summary judgment in an employment discrimination case where the plaintiff relies "on conclusory allegations of discrimination and the employer provides a legiti-

mate rationale for its conduct." *Tojzan v. New York Presbyterian Hosp.*, No. 00 Civ. 6105(WHP), 2003 WL 1738993, at *4 (S.D.N.Y. March 31, 2003).

## II. Discrimination Claims

■ Plaintiff first alleges race discrimination under both Title VII and New York Executive Law ("NYEL") Section 290. Discrimination suits brought under Title VII follow the familiar burden-shifting regime established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must make out a prima facie case of discrimination by showing that (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998) (citing *McDonnell Douglas*). The burden then shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse employment action. If the employer does so, the final burden remains with the plaintiff to show that the nondiscriminatory reason asserted by the employer was pretextual and that the employer discriminated against him. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143–44, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

■ Although Title VII does not define adverse employment actions "solely in terms of job termination or reduced wages and benefits," *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir.1997), it "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. New York City Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citation omitted); *see also Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir.1999). An employee suffers an adverse employment action if a "materially adverse change" in the terms and conditions of his employment takes place. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). As the court explained in *Monica v. New York City Off–Track Betting Corp.*, No. 93 Civ. 6371(RPP), 1995 WL 117879 (S.D.N.Y.1995),

> [a] materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Monica*, 1995 WL 117879 at *8; *see also Davis v. City University of New York*, No. 94 Civ. 7277(SHS), 1996 WL 243256, at *8 (S.D.N.Y.1996).

■ The burden of proof and legal standards for NYEL § 290 are the same as those applied in Title VII cases. *See Classic Coach v. Mercado*, 280 A.D.2d 164, 722 N.Y.S.2d 551, 552 (2d Dep't 2001), *Lumhoo v. Home Depot USA, Inc.*, 229 F.Supp.2d 121, 135 (E.D.N.Y.2002) (stating that New York State employment discrimination laws are analyzed under the same framework that governs Title VII).

In his discrimination claims against Allstate and Smith, Plaintiff alleges the following adverse employment actions: (1) Smith's use of abusive, profane, and insulting language toward Plaintiff in the presence of other employees; (2) Allstate's retaliation for Plaintiff's complaint of discrimination; (3) Plaintiff's transfer from Hicksville to Allstate's Elmhurst office in February 1999; and (4) Plaintiff's disparate treatment during Smith's employment at Allstate from January 1998 through February 1999 because he was African American. (Compl.¶ 26).

■ As an initial matter, Plaintiff's Title VII claims against Smith must be dismissed because there is no basis for personal liability against an individual under that statute. *See Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir.1995). Since Smith may be held liable under the NYEL, however, those claims remain.

■ First, Plaintiff's allegations of verbal abuse and insults by Smith and retaliatory actions by Allstate are addressed *infra* as part of Plaintiff's hostile work environment and retaliation claims. However, the Court also notes here that "being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments ... do not rise to the level of adverse employment actions ... because they [do] not have a material impact on the terms and conditions of Plaintiff's employment." *Lee v. New York State Dept. of Health*, 2001 U.S. Dist. LEXIS 11287, at *69 (S.D.N.Y.2001).

■ Second, Plaintiff's transfer claim also fails because his transfer to Elmhurst does not constitute an adverse employment action. Plaintiff retained the same position, the same responsibilities, and the same salary and benefits. It is well-settled that a lateral transfer does not rise to the level of an adverse employment action as a matter of law. *See, e.g., Mishk v. Destefano*, 5 F.Supp.2d 194, 202 (S.D.N.Y. 1998); *Pimentel v. City of New York*, 74 Fed.Appx. 146, 148 (2d Cir.2003). The only substantive difference between the two positions was that the Elmhurst position resulted in a longer commute—which is an inconvenience, not an adverse employment action. *See Galabya*, 202 F.3d at 640 (holding that an incident must be "more disruptive than a mere inconvenience" to constitute an adverse employment action).

■ Even if this Court found that the transfer did establish a prima facie case for discrimination—which it does not— Plaintiff's discrimination claims would be dismissed for failure to rebut Allstate's legitimate business reasons for transferring Plaintiff to Elmhurst. The undisputed affidavit of a former Allstate employee, Robert Bond, stated that he had requested that Plaintiff be transferred to Elmhurst to fill a vacant FPL position in their office. (Bond Aff. ¶¶ 4–5). Moreover, as soon as Allstate learned that Plaintiff was unhappy about the transfer because of the longer commute to Elmhurst, Allstate promptly reinstated Plaintiff in the Hicksville office. (Bond Aff. ¶ 6).

■ Third, Plaintiff also bases his discrimination claim on his allegation that Smith treated him differently than other similarly situated employees "because [he] was African American." (Compl.¶¶ 15, 26). "[A]n inference of discrimination may be drawn by a showing that the employer criticized the plaintiff's performance in ethnically degrading terms, made invidious comments about others in the employee's protected group, or treated employees not in the protected group more favorably." *Hunter v. St. Francis Hosp.*, 281 F.Supp.2d 534, 542 (E.D.N.Y. 2003). Here, however, the record is devoid of any evidence from which an inference of discrimination may be drawn. In addition to evidence that Smith was aggressive and unprofessional with all of his managers, Plaintiff has failed to offer a single act, statement, or admission by Smith or any other manager to support his allegation that he was treated more harshly because of his race. "[A] Plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn." *Little v. New York*, 1998 WL 306545, at *5, 1998

U.S. Dist. LEXIS 21797, at *14–15 (E.D.N.Y. June 8, 1998), aff'd, 1999 WL 220147, 1999 U.S.App. LEXIS 7768 (2d Cir. April 14, 1999).

Defendants' motions for summary judgment on Plaintiff's racial discrimination claims are therefore granted, and those claims are hereby dismissed.

## III. Hostile Work Environment Claim

█ Plaintiff also asserts claims against Allstate and Smith of hostile work environment based on race. To prevail on a hostile work environment claim, the complained of conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The complained of "incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief." *Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 62 (2d Cir.1992).

█ Plaintiff cited incidents of Smith allegedly "verbal abus[ing]" Plaintiff at staff meetings, using vulgarity and curse words, threatening Plaintiff with subordination, pointing his finger in Plaintiff's face during a discussion, and requiring Plaintiff to do additional work.[2] (Compl. ¶ 15; Pl. Counter–Stmt. Facts ¶ 28). While Plaintiff alleges in a conclusory fashion that

these incidents were racially motivated, he offers no facts in support.[3]

█ The case law is clear on this point. The anti-discrimination laws are not "a general civility code," and they do "not prohibit all verbal or physical harassment in the workplace," only that which is motivated by specified improper considerations. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *see also Kodengada v. IBM*, 88 F.Supp.2d 236, 243 (S.D.N.Y.2000) ("Offensive comments, such as using profanity to refer to a co-worker, [do] not rise to the level required to demonstrate a discriminatory hostile work environment."). The only specific, race-related incident between Smith and Plaintiff involved Smith's comment, made at a company picnic, that he didn't think African Americans needed sunblock. Smalls Dep. 294: 10–11. While such a comment may have offended Plaintiff, "offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citation and internal quotation omitted).

Therefore, where there is no evidence that an allegedly hostile work environment was motivated by a plaintiff's race, the claim must be dismissed. *Jessamy v. City of New Rochelle*, 292 F.Supp.2d 498, 512

---

**2.** Plaintiff also alleges that Smith made racially derogatory comments about other employees years before Plaintiff was employed under Smith. These allegations suffer from two infirmaties that preclude their consideration: (1) they are not based on admissible evidence but rather on covertly recorded conversations with third parties, and (2) incidents that occurred years earlier and which Plaintiff did not witness, may not be used to sustain a hostile work environment claim. *See P. v. Delta Air Lines, Inc.*, 102 F.Supp.2d 132 (E.D.N.Y.2000); *Walker v. Columbia Univ.*,

1998 WL 567909 (S.D.N.Y.), aff'd, 182 F.3d 902 (2d Cir.1999)(excluding racial slurs and comments not known by the plaintiff during the time she allegedly suffered the hostile work environment).

**3.** To the contrary, one of Plaintiff's co-workers testified that she did not perceive an altercation that she witnessed between Smith and Plaintiff as being racially motivated. (DiSomma Aff., Exh. H).

(S.D.N.Y.2003) (stating that "the case law proves ... that the absence of such conduct [of any overtly racial character] is a factual omission that is necessarily fatal to a race-based hostile work environment claim"). Here, as in *Walker v. New York City Transit Auth.*, 2001 WL 1098022 (S.D.N.Y.2001),

> [a]lthough the record suggests that plaintiff was subjected to an extremely unpleasant work environment in which [his manager] regularly reprimanded him in the presence of co-workers, the record contains no evidence from which a reasonable jury could conclude that plaintiff's treatment was motivated by any discriminatory animus based on race.

*See also Neishlos v. City of New York*, 2003 WL 22480043, *7 (S.D.N.Y.2003)(holding that the allegations draw a "picture of a supervisor who is unpleasant, unfair and arbitrary—but not ethically or religiously biased").

Furthermore, courts have dismissed hostile work environment claims in the face of far stronger evidence of harassment and racist comments than presented here. *See, e.g., Richardson*, 180 F.3d 426 (affirming the district court's grant of summary judgment on a hostile work environment allegation where Plaintiff had identified fifteen alleged specific incidents of harassment, including three that involved racial slurs); *Curtis v. Airborne Freight Corp.*, 87 F.Supp.2d 234 (S.D.N.Y.2000) (dismissing on summary judgment a hostile work environment allegedly created by nine incidents over ten months, including two racist comments).

In sum, this Court finds that Plaintiff has failed to allege facts sufficient to sustain a race-based hostile work environment claim, and, therefore, Defendants' motions for summary judgment are granted and the claims are dismissed.

## IV. Retaliation Claim

In addition to the preceding counts, Plaintiff also asserts a claim of unlawful retaliation solely against Allstate. Under Title VII "it shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [such employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). A plaintiff making a retaliation claim under Title VII must prove four elements: (1) that he participated in a protected activity; (2) that his employer was aware of the activity; (3) that an adverse employment action occurred; and (4) that there was a causal connection between the protected activity and the adverse employment action. *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir.1996); *Cruz*, 202 F.3d at 566.

Plaintiff has failed to show either a temporal or causal connection between a protected activity and any alleged adverse employment action. *See McMenemy v. City of Rochester*, 241 F.3d 279, 284 (2d Cir.2001) ("Title VII protects an employee from any employer ... who retaliates against him because of his prior or ongoing opposition to an unlawful employment practice or participation in Title VII proceedings."); *Davis v. State Univ. of New York*, 802 F.2d 638, 642 (2d Cir.1986) (stating that proof of a causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action). Although Plaintiff's transfer to Elmhurst on February 5, 1999 occurred soon after Plaintiff had made a complaint to Allstate's Resolution Hotline in January 1999, that call was made anonymously and, since Plaintiff did not refer to any racial discrimination, does not constitute a protected activity within

the meaning of Title VII because Plaintiff did not complain about federally protected discriminatory behavior.[4] *See Moran v. Fashion Inst. Of Tech.*, 2002 WL 31288272, at *9, 2002 LEXIS 19387, at *23–24 (S.D.N.Y. Oct. 7, 2002). No evidence has been presented suggesting that Plaintiff's transfer was in any way caused or motivated by Defendant's knowledge of his protected activities protesting discrimination. In fact, Smith played no role whatsoever in the decision to transfer Plaintiff. Rather, as Defendants point out, the decision was made by Smith's supervisor, McDonald, at the request of a manager in the Elmhurst office to fill a need at the Elmhurst office. (Def. Smith Reply at 24).

 Similarly, Plaintiff's redeployment in October 1999, eleven months after Plaintiff filed a complaint with the NYSDHR, is also insufficiently connected to establish a prima facie case of retaliation. To establish a causal connection based on temporal proximity, a protected activity must be "closely followed in time by the adverse action." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir.1996). *See, e.g., Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)(stating that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'" and citing cases in which three— and four-month periods were found to be insufficient); *James v. Newsweek*, 1999 WL 796173, at *15, 1999 U.S. Dist. LEXIS 15588, at *48 (S.D.N.Y. Sept. 30, 1999), *aff'd*, 2000 WL 536409, 2000 U.S.App. LEXIS 8805 (2d

Cir. May 2, 2000)(finding a four month interval to be too long).

 Plaintiff has failed to rebut Allstate's showing that his redeployment was part of a nationwide reorganization effort that included as one of its main initiatives reducing the number of overall managerial positions and moving them to service-oriented positions. (Def. Allstate Br. at 19; Fisk Aff. ¶ 4). As a result, Plaintiff was one of hundreds of claim managers throughout the country who were removed from management positions and redeployed in "frontline" service positions. (*Id.*). More importantly, Plaintiff has presented no evidence that Fiske, the manager charged with evaluating the leadership skills of the FPLs, possessed any knowledge of Plaintiff's NYDHR Complaint when she ranked her managers for redeployment. (Pl. Opp. at 29; Fiske Aff. ¶ 9). In her affidavit, Fiske stated that she did not consult with Smith or any other Allstate employees before ranking the FPLs and evaluated them solely on the leadership skills they exhibited while she was MCM. (Def. Allstate Br. at 19; Fiske Aff. ¶ 5).

Therefore, given the inadequacy of facts alleged, Allstate's motion for summary judgment is granted, and Plaintiff's claim of retaliation under Title VII is dismissed.

## V. Intentional Infliction of Emotional Distress

 Finally, Plaintiff claims intentional infliction of emotional distress against both Allstate and Smith. Plaintiff acknowledges in his opposition that the statute of limitations for claims of intentional infliction of emotional distress is one year. The most recent alleged act of Smith relating to this claim occurred more than one year

---

**4.** The Court notes that Plaintiff's transfer to Elmhurst occurred *before* his NYSDHR Complaint I; which was filed on March 15, 1999.

prior to the filing of Plaintiff's Complaint. Plaintiff argues, however, that the statute of limitations should have been tolled during the pendency of the investigation by the NYSDHR. Plaintiff correctly points out that district courts within the Second Circuit have disagreed about whether to toll claims in these circumstances. "[T]he weight of authority, however, has held that state common law claims are not tolled during the pendency of an NYSDHR or EEOC claim." *Duran v. Jamaica Hosp.,* 216 F.Supp.2d 63, 68 (E.D.N.Y.2002).

In fact, relying on the Supreme Court's analysis of the congressional intent of Title VII in *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), this Court has previously found that "[a plaintiff's] intentional infliction of emotional distress claim was not tolled by the pendency of her EEOC claims and must have been brought within the one year statute of limitations." *King v. Friend of a Farmer, Corp.,* 2001 WL 849460, at *4 (S.D.N.Y.2001). Here, as in *King,* because Plaintiff's common law intentional infliction of emotional distress claim was not tolled during the pendency of the NYSDHR proceeding, it is time-barred.

 Even if Plaintiff's claim was not time-barred, Plaintiff has failed to establish the four elements of a claim of intentional infliction of emotional distress: "(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Gonzalez v. Bratton,* 147 F.Supp.2d 180, 194 (S.D.N.Y.2001). New York sets a high threshold for conduct that is considered 'extreme and outrageous' enough to constitute intentional infliction of emotional distress. *Sigmon v. Parker Chapin Flattau & Klimpl,* 901 F.Supp. 667, 680–81 (S.D.N.Y.1995) (*citing Murphy v. Am. Home Products Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (N.Y.1983) (stating that New York courts find liability "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.")).

Plaintiff's citations to workplace arguments with Smith concerning Plaintiff's performance are insufficient to meet the strict standards for claims of intentional infliction of emotional distress set forth by New York Courts. *See Walker v. New York City Transit Auth.,* 2001 WL 1098022, at *14 (S.D.N.Y. Sept.19, 2001). Moreover, Plaintiff's assertion that he cried once after his last argument with Smith, does not constitute *"severe* emotional distress," the fourth element required by this court to state a claim of intentional infliction of emotional distress. *Gonzalez,* 147 F.Supp.2d at 194 (emphasis added).

Accordingly, Defendants' motions for summary judgment are granted, and the claims of intentional infliction of emotional distress against Smith and Allstate are dismissed.

## VI. Conclusion

The Court is sympathetic to Plaintiff's discontent with Smith's unprofessional, rude, and aggressive workplace behavior while Smith was employed at Allstate. However, the facts alleged do not support claims for race-based discrimination, hostile work environment, intentional infliction of emotional distress or retaliation under Title VII.

Accordingly, Defendants' motions for summary judgment are granted and the Complaint is dismissed in its entirety.

**SO ORDERED:**